# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

DERRICK VONN SMITH,

            Plaintiff,

v.

OLMSTED COUNTY SHERIFF'S
DEPARTMENT, DEPUTY
SCHOENFELDER, RICHARD NERSTAD,
ROCHESTER FEDERAL MEDICAL
CENTER, and HARRIS COUNTY
PROBATION,

            Defendants.

**MEMORANDUM OF
LAW AND ORDER**
Civil File No. 21-01703 (MJD/HB)

Derrick Von Smith, Plaintiff, pro se.

Gregory J. Griffiths and John T. Giesen, Dunlap & Seeger, Attorneys for
Defendants Olmsted County, Minnesota and Deputy Schoenfelder; Gregory J.
Griffiths, Dunlap & Seeger and James Butt, Assistant Harris County Attorney,
Attorneys for Defendant Harris County Probation; Liles Harvey Repp, Assistant
United States Attorney, Attorney for Defendants Rochester Federal Medical
Center and Richard Nerstad.

## I.    INTRODUCTION

      This matter is before the Court on Olmsted County Sheriff's Department

and Deputy Schoenfelder's Motion to Dismiss Plaintiff's Amended Complaint

(Doc. 27); Defendant Harris County Probation Office's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(2) (Doc. 36); and the Federal Defendants' Motion to Dismiss Official-Capacity Claims (Doc. 46). All Defendants attempted to meet and confer with Plaintiff Derrick Vonn Smith ("Smith") prior to filing their respective motions. (Docs. 31, 40, 49.) Smith only responded to AUSA Repp, who states that he believes Smith and the Federal Defendants do not agree as to the resolution of the Federal Defendants' Motion. (Doc. 49.) Smith has not filed responses to any of the motions.

## II.    THE AMENDED COMPLAINT

On January 24, 2022, Smith filed an amended complaint ("the Complaint") stating that on July 15, 2020, as he was being released from the Federal Medical Center in Rochester, Minnesota, ("FMC Rochester"), he was detained on a fugitive of justice warrant from the state of Texas by Mr. Nerstad "who is over receiving and departing inmates" and was "in charge" of Smith leaving the federal prison. (Compl. at 2.)

(FMC Rochester and Mr. Nerstad ("the Federal Defendants") note that while there is record of a former FMC Rochester employee with the surname "Nerstad," there was no employee named "Richard Nerstad." (Doc. 48 at 2 n.1.)

On March 3, 2022, a summons was returned unexecuted as to Richard Nerstad at FMC Rochester with the notation "No longer @ facility.  No longer employed by BOP."  (Doc. 19.)  Notwithstanding these facts, the following narrative includes facts related to Nerstad and the Federal Defendants have responded to claims against Nerstad.)

The Complaint states that Smith was detained for "several hours" and strip searched for contraband before being turned over to the Olmsted County Sheriff for extradition to the state of Texas on a Fugitive from Justice Warrant, which was humiliating and which the Complaint includes under the heading "sexual assault."  (Compl. at 2, 5-6.)   The Complaint asserts that Nerstad notified Harris County, Texas authorities that Smith was at FMC Rochester when he first arrived there in 2018, "but Harris County had never responded to his request over the warrant."  (Id. at 2.)

Once Smith was in the custody of Olmsted County, the Complaint asserts Olmsted County Sheriff's Deputy Schoenfelder violated his Fourth Amendment rights by arresting him on his fugitive warrant.  As a result of his detention in Olmsted County, the Complaint asserts that Smith suffered "from headaches due to not taking pain medication I had previously as well as my breathing inhaler,"

that he broke out in a rash "due to the hard water at Olmsted County . . . and

when I complained about the rash I was given foot cream for a rash by my

private part." (Id. at 6.)

The Complaint states that the warrant was defective, which rendered "the

whole extradition illegal and a violation of [his] 4th Amendment Rights [against]

illegal arrest. (Id. at 2.) The Complaint further states that the extradition warrant

is illegal because it is supposed to be signed by the governors of both Texas and

Minnesota and while Governor Walz signed for the State of Minnesota, Jeffery

Oldham signed for Governor Abbott of Texas under a delegation of the Texas

Governor's signature authority. (Doc. 13-1 at 2.)

Smith filed claims against all Defendants based on "Federal Jurisdiction,

Diversity of citizenship" for "Violation of [his] 4th amendment constitutional

right of free [sic] unreasonable search and seizure of one's person, such as an

arrest" and "42 U.S.C. 1983." (Compl. at 4.) He seeks $1 million in compensation

for pain and suffering, time away from his family and his job search, suffering

due to incarceration during the Covid-19 pandemic and due to the strip search,

and lost personal property (headphones, an MP3 player, watches, possibly a

phone, and medications). (Id. at 4-6.)

### III.   SMITH'S FAILURE TO RESPOND

The deadline to respond to the most-recently filed motion to dismiss was May 31, 2022.  (Doc. 46 (Federal Defendants' Motion to Dismiss filed May 10, 2022); D. Minn. LR 7.1(c)(2) (party responding to a dispositive motion has 21 days to respond).)  Smith has not responded.  Therefore, these motions are all unopposed.  Smith's  noncompliance, however, is not sufficient reason on its own to grant Defendants' motions.  Johnson v. Boyd–Richardson Co., 650 F.2d 147, 149–50 (8th Cir. 1981) (holding that it is "the court's duty to inquire into the merits of the motion . . .  in accordance with law and the relevant facts," regardless of whether a party has complied with the local rules); Savior v. McGuire, No. CIV. 02-1272(RHK/AJB), 2002 WL 1906023, at *2 (D. Minn. Aug. 15, 2002), aff'd, 61 F. App'x 318 (8th Cir. 2003) (same).  Accordingly, the Court will examine the merits of Defendants' motions.

### IV.   THE FEDERAL DEFENDANTS' MOTION TO DISMISS

Although Smith does not specify which facts of the Complaint he attributes to which Defendant(s), it appears that the actions that he attributes to the Federal Defendants are that Mr. Nerstad, an FMC Rochester employee who exercised authority "over receiving and departing inmates" and was "in charge" of Smith's departure, notified Harris County, Texas of Smith's arrival at FMC

5

Rochester, but that no one from Harris County responded to that inquiry and that no one from Harris County was at FMC Rochester to take Smith into custody upon his release from federal custody. (Compl. at 2.) Nerstad then allegedly detained Smith temporarily before turning Smith over to the Olmsted County Sheriff. (Id. at 2, 4-5.) Prior to being released from federal custody, Smith was subjected to a strip search for contraband. (Id. at 2.) For these actions, Smith pleads violations of his Fourth Amendment rights based on his illegal detention. (Id. at 4-5.)

The Federal Defendants note that although Smith uses the word "negligently" in reference to a "violation of [his] 4th Amendment right," it does not appear Smith pleads a tort claim under the Federal Tort Claims Act. (Doc. 48 at 3-5 n.4.) To do so, Smith would first have to present his claim to the appropriate agency and exhaust administrative remedies. See 28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a). The Federal Defendants also note the following:

> Complaints against government officials must ordinarily contain a "specific pleading" indicating the capacity in which those individuals are sued. See Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999). Where silent, courts normally "interpret [a] complaint as including only official-capacity claims." Egerdahl v. Hibbing Comm. Coll., 72 F.3d 615, 619 (8th Cir. 1995). Plaintiff fails to plead whether he brings claims against Mr. Nerstad in an official or individual capacity. See Compl. Though Plaintiff

6

cites to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 368 (1971), in a subsection of his "Relief" section, <u>see</u> Compl. at 6, it is not clear whether he seeks to bring a <u>Bivens</u> claim against Mr. Nerstad.  Mr. Nerstad does not appear to have been served in an individual capacity, <u>see</u> Dkt. No. 19, and undersigned counsel's representation is limited to official-capacity claims.  <u>See</u> Dkt. No. 45. Out of an abundance of caution, this motion seeks dismissal of official-capacity claims.

(Doc. 48 at 2 n.2.)

The Court agrees that Nerstad was apparently not served in his individual capacity.  (Doc. 19 (unexecuted summons returned stating that Nerstad no longer works at the BOP, although address on summons is different from address on summons for FMC—Rochester (Doc. 21)).)   The Complaint is also "silent" as to whether Smith brings claims against Nerstad in an official or individual capacity. (Compl. at 2, 4-6.)  Thus, it is appropriate to address Smith's claims against the Federal Defendants as official capacity claims.  <u>Egerdahl</u>, 72 F.3d at 619.

The Federal Defendants argue that the counts against them must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Section 1983 does not provide for an action against federal agencies and officials.  In addition, the Federal Defendants argue that they did not waive sovereign immunity in this case and Smith did not plead that they did so.

A.      **Subject Matter Jurisdiction**

1.      **Standard for Motion to Dismiss under Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows the Court to dismiss cases

for want of subject matter jurisdiction.   "Jurisdictional issues, whether they

involve questions of law or of fact, are for the court to decide." Osborn v. United

States, 918 F.2d 724, 729 (8th Cir. 1990).  "In order to properly dismiss for lack of

subject matter jurisdiction under Rule 12(b)(1), the complaint must be

successfully challenged on its face or on the factual truthfulness of its

averments."  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted).

"In a facial challenge to jurisdiction, all of the factual allegations concerning

jurisdiction are presumed to be true and the motion is successful if the plaintiff

fails to allege an element necessary for subject matter jurisdiction." Id.  (citations

omitted).  A dismissal for lack of subject matter jurisdiction is not an adjudication

on the merits and therefore should be a dismissal without prejudice.  See Dalton

v. NPC Int'l, Inc., 932 F.3d 693, 696 (8th Cir. 2019) ("A district court is generally

barred from dismissing a case with prejudice if it concludes subject matter

jurisdiction is absent.") (quoting County of Mille Lacs v. Benjamin, 361 F.3d 460,

464–65 (8th Cir. 2004)).

8

2. **Section 1983**

The Complaint's sole bases for jurisdiction are diversity of citizenship and

42 U.S.C. § 1983 (Compl. at 4), which provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law. . . .

Section 1983 applies only to state actors; the actions of the federal government

and its officials are beyond its purview.  District of Columbia v. Carter, 409 U.S.

418, 424–25 (1973); Davis v. United States, 439 F.2d 1118, 1119 (8th Cir. 1971) ("by

its plain language [§ 1983] does not authorize redress against the United

States."); Ho v. United States, No. CIV. 12-126 DWF/LIB, 2012 WL 6861343, at *8

(D. Minn. Dec. 11, 2012) (same), R & R adopted, 2013 WL 160119 (D. Minn. Jan.

15, 2013).  Accordingly, Smith cannot bring his official capacity claims against the

Federal Defendants under § 1983 and his claims against the Federal Defendants

must be dismissed on this basis.

### 3.   Sovereign Immunity

In addition, the claims against the Federal Defendants must be dismissed

because the United States has not waived sovereign immunity for official

capacity claims for money damages in this case.

To the extent the Complaint states official capacity constitutional claims

against the Federal Defendants, those claims will be interpreted as being brought

against the United States.  See Schaffer v. Beringer, 842 F.3d 585, 596 (8th Cir.

2016) ("A suit against a public official in his official capacity is actually a suit

against the entity for which the official is an agent.").

As a sovereign, the United States is immune from suit unless it consents to

be sued.  See Melo v. United States, 505 F.2d 1026, 1028 (8th Cir. 1974) (citations

omitted).  The existence of this consent is a prerequisite to the district court's

jurisdiction.  See Kratville v. United States Bureau of Prisons, No. 17-CV-4453

(MJD/TNL), 2018 WL 6182591, at *2 (D. Minn. Aug. 31, 2018) ("It is axiomatic that

the United States may not be sued [for money damages] without its consent and

that the existence of consent is a prerequisite for jurisdiction.") (quoting United

States v. Mitchell, 463 U.S. 206, 212 (1983) (alterations in original); citing McCourt

v. Rios, No. 08-CV-6411 (PAM/RLE), 2010 WL 3269905, at *7 (D. Minn. July 16,

2010) ("[T]he doctrine of sovereign immunity holds that the United States, and its agencies and instrumentalities — including the [BOP] — are immune from suit . . . .")), <u>R&R adopted</u>, 2018 WL 6181366 (D. Minn. Nov. 27, 2018). Absent such a waiver, the court lacks subject matter jurisdiction to adjudicate Smith's claims. <u>See, e.g.</u>, <u>Dalton v. Fikes</u>, No. 19-CV-2209 (NEB/LIB), 2020 WL 5105776, at *2 (D. Minn. Aug. 31, 2020) (finding no waiver of sovereign immunity for lost property in the custody of the Bureau of Prisons in the FTCA and therefore no subject matter jurisdiction to hear the plaintiff's claim), <u>aff'd</u>, No. 20-3475, 2021 WL 2201153 (8th Cir. Mar. 1, 2021).

The United States has not waived sovereign immunity for Smith's constitutional claims seeking money damages against the Federal Defendants in their official capacities. Accordingly, these claims must also be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### B. Conclusion

Based on the above discussion, Smith's claims against the Federal Defendants will be dismissed.

## V. OLMSTED COUNTY SHERIFF'S DEPARTMENT AND DEPUTY SHOENFELDER'S MOTION TO DISMISS

11

Smith asserts that after Nerstad detained him post-release at FMC Rochester, Olmsted County Sheriff's Deputy Schoenfelder arrested him for being a fugitive of justice from Texas.  (Compl. at 2.)  He further asserts that he "was asked to sign a waiver to waive my rights for extradition [and] . . . giv[e] up my rights to the arrest as well.  I adamantly refused to sign it and we were set for trial." (Id.)  As a result of his detention in Olmsted County, Smith has filed a § 1983 claim, stating that he suffered headaches because he was denied "pain medication that [he] had previously" and his inhaler and that due to hard water, he broke out in a rash near his private part that was treated with foot cream.  (Id. at 6.)  He also asserts that the delegation of authority by the Governor of Texas "makes the whole extradition illegal and a violation of my 4th Amendment Rights of illegal arrest."  (Id. at 2.)

The following facts are relevant to Smith's claims against Olmsted County and Schoenfelder.  The Court notes that the Complaint does not mention Judge Joseph Chase's orders.  However, when deciding a motion to dismiss, the Court "may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint."  Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (cleaned up and citations omitted).

On July 16, 2020, Schoenfelder attached a "Statement of Probable Cause" to a complaint that he presented to District Judge Joseph Chase explaining that on July 15, 2020, Schoenfelder took custody of Smith from FMC Rochester pursuant to an active warrant out of Harris County, Texas.   (Doc. 13-1 at 4-5.)  The Statement of Probable Cause also stated that Schoenfelder contacted the Harris County, Texas Sheriff's Office to confirm the warrant and Harris County's intent to extradite Smith from the State of Minnesota.  (Id. at 5.)  Schoenfelder further stated that he requested and received a copy of an active arrest warrant issued from the state of Texas dated December 9, 2010 for Smith's probation violation following a felony drug conviction.  (Id.)  Schoenfelder also explained that he interviewed Smith who verbally identified himself, stated that he had only recently learned of the Texas warrant, and admitted that he was in Texas at the time of the offense.  (Id.)  On July16, 2020, Judge Chase found that probable cause existed to charge Smith with being a fugitive from justice from another state in violation of Minn. Stat. § 629.13.  Court File Number 55-CR-20-4040 on https://publicaccess.courts.state.mn.us/CaseSearch (cited in Olmsted County Sheriff's Dept. and Dep. Schoenfelder's Br. at 2.)  Judge Chase ordered that Smith be held pending further proceedings.  Id.

On September 25, 2020, Minnesota Governor Walz signed a fugitive

warrant (also called "a requisition" or "a rendition") that was also signed by

Jeffery Oldham, Authenticating Officer for Texas Governor Greg Abbott on

August 25, 2020.  (Doc. 13-1 at 1–2.)

### A.    Standard for Motion to Dismiss under Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may

move the Court to dismiss a claim if, on the pleadings, a party has failed to state

a claim upon which relief may be granted.  In reviewing a motion to dismiss, the

Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d

842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  Thus, although a complaint need not include
> detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and

"materials that are part of the public record or do not contradict the complaint, as

well as materials that are necessarily embraced by the pleadings."  Greenman,

787 F.3d at 887 (citations omitted).

14

### 1.   Official Capacity Claim

The Olmsted County Defendants argue that Smith's claims against them should be dismissed because Smith has failed to assert an official capacity claim.

 As discussed above, because the Complaint does not state that Schoenfelder is being sued in his individual capacity, the Court must assume he is being sued only in his official capacity.  Egerdahl, 72 F.3d at 619; Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007) ("If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims.") (brackets in original) (quotation omitted).

> [A] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.  Thus to sustain the actions against [officials] in their official capacities, [plaintiffs] must prove that the County itself caused the constitutional violation at issue.  In general, a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a respondeat superior theory of liability.  However,
>
> > [l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to

15

governmental "custom" even though such a custom has
not received formal approval through the body's official
decisionmaking channels.

Marsh v. Phelps Cnty., 902 F.3d 745, 751 (8th Cir. 2018) (ellipses in original)

(internal citations omitted).

The Complaint alleges wrongdoing on the part of Olmsted County and

Schoenfelder.  However, the Complaint does not allege any unconstitutional

actions that are the result of a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by Olmsted County or the Sheriff's

Department or even that such actions are the result of a custom.  See id.  Thus,

the Complaint fails to state an official capacity claim as a matter of law.

### 2.    Qualified Immunity Regarding Deputy Schoenfelder

Under our precedents, officers are entitled to qualified immunity
under § 1983 unless (1) they violated a federal statutory or
constitutional right, and (2) the unlawfulness of their conduct was
clearly established at the time.  "Clearly established" means that, at
the time of the officer's conduct, the law was  sufficiently clear that
every reasonable official would understand that what he is doing is
unlawful.  In other words, existing law must have placed the
constitutionality of the officer's conduct beyond debate.  This
demanding standard protects all but the plainly incompetent or
those who knowingly violate the law.

District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (cleaned up and internal

citations omitted).

16

### a)      Fourth Amendment Rights

The Complaint avers that Schoenfelder violated Smith's Fourth

Amendment Rights by arresting and detaining him.  (Compl. at 5.)

"A Person charged in any State with Treason, Felony, or other Crime, who

shall flee from Justice, and be found in another State, shall on Demand of the

executive Authority of the State from which he fled, be delivered up, to be

removed to the State having Jurisdiction of the Crime."  U.S. Const. art. IV, § 2,

cl. 2.  It is a matter of state law whether the asylum state may make an arrest in

advance of requisition and whether any arrest can be made without a warrant.

Burton v. New York Cent. & H.R.R. Co., 245 U.S. 315, 318 (1917) ("Whether the

asylum state shall make an arrest in advance of requisition, and, if so, whether it

may be made without a warrant, are matters which each state decides for

itself.").  In Minnesota, a warrantless arrest made prior to law enforcement

seeking a rendition warrant for a fugitive from another state is valid.  See Clemas

v. United States, 382 F.2d 403, 405 n.2 (8th Cir. 1967) (stating that an arrest

"would be valid as a person duly charged with a felony in one state may, if he

flees to another, be arrested, without a warrant by a peace officer in the state in

which he is found") (citing Stallings v. Splain, 253 U.S. 339, 341 (1920); Burton,

245 U.S. 315).

In addition, Minnesota has adopted the Uniform Criminal Extradition Act,

which states "it is the duty of the governor of this state to have arrested and

delivered up to the executive authority of any other state of the United States any

person charged in that state with treason, felony, or other crime, who has fled

from justice and if found in this state."  Minn. Stat. § 629.02.  Under Minn. Stat. §

629.13, a judge shall issue a warrant directing any peace office to apprehend a

person "within this state . . . charged on the oath of any credible person . . . with

the commission of any crime in any other state and . . . having fled from justice. .

. ."  Judge Chase found there was probable cause that Smith violated this statute.

The Act further authorizes any peace officer in the state to make a warrantless

arrest "upon reasonable information that the accused stands charged in the

courts of a state with a crime punishable by . . . imprisonment for a term

exceeding one year."  Minn. Stat. § 629.14.  After being arrested, the accused

"must be taken before a judge with all practicable speed and complaint must be

made against the accused under oath setting forth the ground for the arrest as

in section 629.13."  Id.

The Court finds that Schoenfelder had reasonable information at the time he arrested Smith that Smith had been charged with a felony in Texas. Schoenfelder received a copy of the active Texas arrest warrant for Smith's probation violation following a felony drug conviction. (Doc. 13-1 at 5.) The Complaint contains no facts that undermine this information. Thus, even though the arrest was made without a warrant, it was proper. See State v. Schenk, No. C5-00-1360, 2001 WL 273092, at *2 (Minn. Ct. App. Mar. 20, 2001) (holding that when sheriff's office was notified that the defendant was charged in Washington with a crime punishable by imprisonment for more than one year, defendant's arrest was proper). In addition, after Smith was arrested, Schoenfelder brought Smith before Judge Chase "with all practicable speed and complaint [was] made against [him] under oath setting forth the ground for the arrest as in section 629.13."

Schoenfelder did not violate Smith's Fourth Amendment rights when he arrested and detained him.

### b)   "Clearly Established" Rights

Another way Smith can overcome a qualified immunity defense, is to prove that the law Schoenfelder violated was "clearly established" at the time,

19

which "means that, at the time . . . the law was sufficiently clear that every

reasonable official would understand that what he is doing is unlawful.  In other

words, the existing law must have placed the constitutionality of the officer's

conduct beyond debate."   Wesby, 138 S. Ct. at 589.

Here, Smith claims that the delegation of authority by the Texas Governor

"makes the whole extradition illegal and a violation of [his] 4th Amendment

Rights of illegal arrest."  (Compl. at 2.)

Even if Texas Governor Abbott's delegation of authority was someone

improper, his demand for extradition occurred in August 2020 after

Schoenfelder's July arrest of Smith.  Therefore, Schoenfelder's involvement in

Smith's arrest is not a basis for imposing liability on Schoenfelder because

"[l]iability under section 1983 requires a causal link to, and direct responsibility

for, the deprivation of rights. . . .", which means that Schoenfelder's "own actions

[had to be] directly responsible" for the deprivation of Smith's rights.  Z.J. ex rel.

Jones v. Kansas City Bd. of Police Commissioners, 931 F.3d 672, 688 (8th Cir.

2019).  Clearly, Schoenfelder was not responsible for the Texas Governor's

delegation of signatory authority—or even review of such—when that signature

had not occurred at the time Schoenfelder arrested Smith.

Moreover, Smith cannot show that Texas's delegation of signatory authority violates any "clearly established" precedent.  Minnesota accepts fugitive warrants signed by authenticating officers on behalf of governors of other states:

> Where appearing in sections 629.01 to 629.29, the term "governor" includes any person performing the functions of governor by authority of the law of this state. The term "executive authority" includes the governor, and any person performing the functions of governor in a state other than this state. The term "state," referring to a state other than this state, includes any other state or territory, organized or unorganized, of the United States.

Minn. Stat. § 629.01;  State ex rel. Abernathy v. Zacharias, 405 N.W.2d 913, 914 (Minn. Ct. App. 1987) (holding that extradition warrant was valid on its face when signed by Ohio authenticating officer who performed that function of the governor).

For its part, Texas allows its governor to "appoint an authenticating officer . . . and delegate to that officer the power to sign for the governor or to use the governor's facsimile signature for signing any document that does not have legal effect under this code unless it is signed by the governor."  Tex. Code Crim. Proc. Ann. art. 2.24.

Here, not only did Schoenfelder arrest Smith before Oldham signed the extradition request on behalf of Texas Governor Abbott, but Minnesota also

clearly accepts extradition requests signed by authenticating officers on behalf of state governors.  Abernathy, 405 N.W.2d at 914.  Thus, Schoenfelder did not violate any of Smith's clear constitutional rights when he arrested him.

### 3.      Inadequate Medical Care Claim Against Olmsted County

As a result of his detention in Olmsted County, Smith claims he suffered headaches because he was denied "pain medication that [he] had previously" and his inhaler and that due to hard water, he broke out in a rash near his private part that was treated with foot cream.  (Compl. at 6.)

Deliberate indifference to the serious medical needs of prisoners constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.  However, "the failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge."  Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).  A serious medical condition is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  Fourte v. Faulkner Cnty, 746 F.3d 384, 388 (8th Cir. 2014).

> Deliberate indifference is akin to criminal recklessness. Allegations that only evidence misdiagnosis or medical negligence are insufficient to support a claim for cruel and unusual punishment, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. Consequently, it is difficult to establish deliberate indifference when medical care was provided to a plaintiff.

Taylor v. Stearns Cnty. Jail, No. CV 16-3573 (JRT/ECW), 2019 WL 959721, at *3

(D. Minn. Feb. 27, 2019) (cleaned up and citations omitted).

Thus, "[p]rison officials do not violate the Eighth Amendment when, in the

exercise of their professional judgment, they refuse to implement a prisoner's

requested course of treatment." See White v. Farrier, 849 F.2d 322, 327 (8th Cir.

1988) (finding that although defendant's experts diagnosed his condition

differently than prison doctor did, this did not establish deliberate indifference

because physicians are entitled to exercise their medical judgment) (citation

omitted); Mays v. Sherburne Cnty. Jail, No. 20-CV-506 (PAM/ECW), 2022 WL

4239187, at *20 (D. Minn. July 29, 2022) (reasoning that "nothing in the Eighth

Amendment prevents prison doctors from exercising their independent medical

judgment. Prisoners do not have a constitutional right to any particular type of

treatment and Prison officials do not violate the Eighth Amendment when, in the

exercise of their professional judgment, they refuse to implement a prisoner's

requested course of treatment.") (cleaned up and quotation omitted), R&R

adopted, 2022 WL 4238602 (D. Minn. Sept. 14, 2022).

To establish that Olmsted County and/or Schoenfelder were deliberately

indifferent entails both an objective and subjective analysis and application of the

standard is a "factually-intensive inquiry."  Brennan v. Cass Cnty. Health, Hum.

& Veteran Servs., No. 21-CV-1900 (ECT/LIB), 2022 WL 1090604, at *7 (D. Minn.

Apr. 11, 2022) (quoting Scott v. Benson, 742 F.3d 335, 339-40 (8th Cir. 2014)).  To

prove deliberate indifference, Smith must show that "(1) he suffered from

objectively serious medical needs, and (2) the defendants actually knew of, but

deliberately disregarded, those needs."  Id.  (quoting Mead v. Palmer, 794 F.3d

932, 936 (8th Cir. 2015)).

The Complaint does not allege that Smith's headaches or skin rash were

objectively serious and therefore, Smith fails to satisfy the first prong of the

analysis.   Smith does not even claim that he told anyone about his headaches.

(Compl. at 6.)  In addition, although Smith takes issue with Olmsted County's

choice of treatment for his rash, he (1) is not entitled to choose his treatment,

White, 849 F.2d at 327, and (2) does not assert the treatment did not alleviate his

symptoms.  Thus, Smith also fails to satisfy the second prong of the analysis.

Finally, to the extent the Complaint alleges Smith had a constitutional right to soft water while in custody, that claim is without merit.

### B.  Conclusion

Based on the above discussion, Smith's claims against Olmsted County and Deputy Schoenfelder will be dismissed.

## VI.  HARRIS COUNTY, TEXAS PROBATION OFFICE'S MOTION TO DISMISS

### A.  Standard for Motion to Dismiss for Lack of Personal Jurisdiction

The plaintiff bears the burden of proof on the issue of personal jurisdiction. Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015) (citation omitted).  To establish personal jurisdiction, a defendant's minimum contacts with the forum state must exist at the time the suit arose, immediately before the suit was filed, or at the time the suit was filed.  Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561-62 (8th Cir. 2003).  The contacts must be more than "random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice."  Id.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."  Creative Calling Sols., 799 F.3d

at 979 (quoting <u>K–V Pharm. Co. v. J. Uriach & CIA, S.A.</u>, 648 F.3d 588, 591–92 (8th Cir. 2011). At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to the plaintiff, is sufficient to support a conclusion that the exercise of personal jurisdiction over the defendant is proper. <u>Id.</u> (citing <u>Radaszewski ex rel. Radaszewski v. Telecom Corp.</u>, 981 F.2d 305, 309-10 (8th Cir.1992)).

A court may exercise personal jurisdiction over litigating parties either under a theory of specific or general jurisdiction. <u>Murphy v. Lab. Source, LLC</u>, No. 19-CV-1929 (MJD/ECW), 2020 WL 3633234, at *5 (D. Minn. Mar. 12, 2020) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985), <u>R&R adopted as modified,</u> 2020 WL 1888253 (D. Minn. Apr. 16, 2020). Courts find general jurisdiction where a defendant's contacts with the forum are "continuous and systematic." <u>Helicopteros Nacionales de Columbia SA v. Hall</u>, 466 U.S. 408, 414-15 & n.9 (1984); <u>Johnson v. Woodcock</u>, 444 F.3d 953, 956 (8th Cir. 2006) ("General jurisdiction exists where the contacts between the defendant and the forum state are 'continuous and systematic' even if there is no relationship between the contacts and the cause of action."). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy

that establishes jurisdiction." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>,

564 U.S. 915, 919 (2011); <u>Cortec Corp. v. Transilwrap Co.</u>, No. 14-CV-3261

JNE/JSM, 2015 WL 164173, at *4 (D. Minn. Jan. 13, 2015) (same).

"A district court may exercise specific jurisdiction over an out-of-state

defendant only to the extent permitted by the state's long-arm statute and the

Constitution's due process clause."  <u>Federated Mut. Ins. Co. v. Fed. Nat'l</u>

<u>Holding Co.</u>, 928 F.3d 718, 720 (8th Cir. 2019) (citation omitted).  "Because

Minnesota's long-arm statute extends as far as the Constitution allows," the only

issue is whether the exercise of personal jurisdiction comports with due process.

<u>Id.</u>

> Regardless of [whether a general or specific jurisdiction] analysis is
> used, the Eighth Circuit employs a five-factor test to determine
> whether asserting personal jurisdiction over a party comports with
> due process: (1) the nature and quality of the contacts with the
> forum state; (2) the quantity of those contacts; (3) the relationship of
> those contacts with the cause of action; (4) the forum state's interest
> in providing a forum for its residents; and (5) the convenience or
> inconvenience to the parties.   Although the first three factors are
> primary factors, and the remaining two are secondary factors, the
> Court looks at all of the factors and the totality of the circumstances
> in deciding whether personal jurisdiction exists.

<u>Murphy</u>, 2020 WL 3633234, at *5 (cleaned up and citations omitted).

**B.    Discussion**

27

Smith's only allegation against Harris County Probation is that "Harris County probation . . . placed me on a fugitive of justice when I didn't show up for probation because I was arrested by the Feds."  (Compl. at 5.)

Applying the five-factor test to the facts detailed in the Complaint, the Court finds that Harris County Probation's contacts, to the extent there are any, are insufficient to support Minnesota's exercise of personal jurisdiction over it. Harris County is in southern Texas and Harris County Probation had no contacts with Minnesota, not even "random, fortuitous, or attenuated" contacts, either immediately before or at the time Smith filed suit or at the time of the conduct outlined in the Complaint.  Pecoraro, 340 F.3d at 561-62.  Therefore, he first two factors of the analysis are not satisfied.  Likewise, the Complaint does not establish a relationship between Harris County Probation and this cause of action.  There is no specific jurisdiction because the Complaint does not allege any of the operative facts occurred in Harris County, Texas, but only in Minnesota.

Finally, since Smith is a resident of Texas, not Minnesota, Minnesota has no interest in providing him with a forum and Minnesota is not a convenient forum for either Smith or Harris County Probation.  (Compl. at 3.)

Therefore, exercising jurisdiction over Harris County Probation would "offend traditional notions of fair play and substantial justice" because Harris County Probation has not purposefully availed itself of the privilege of conducting business in Minnesota. <u>Pecoraro</u>, 340 F.3d at 561-62. Smith's claims against Harris County Probation will be dismissed.

Accordingly, based on all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

(1)   Defendants Olmsted County Sheriff's Department and Deputy Schoenfelder's Motion to Dismiss Plaintiff's Amended Complaint **(Doc. 27)** is **GRANTED**;

(2)   Defendant Harris County Probation Office's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(2) (**Doc. 36)** is **GRANTED**;

(3)   The Federal Defendants' Motion to Dismiss Official-Capacity Claims (**Doc. 46)** is **GRANTED**; and

(4)   All claims are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: November 30, 2022

s/Michael J. Davis
Michael J. Davis
United States District Court